# United States Court of Appeals
# for the Fifth Circuit

———————

No. 25-60188

———————

United States Court of Appeals
Fifth Circuit

**FILED**

March 23, 2026

Lyle W. Cayce
Clerk

Glen A. Hardwick,

*Petitioner*,

*versus*

Federal Aviation Administration; Bryan Bedford,
*Administrator, Federal Aviation Administration*,

*Respondents*.

———————————————————

Petition for Review from an Order
of the National Transportation Safety Board
Agency No. SE-30824

———————————————————

Before Elrod, *Chief Judge,* and Higginbotham and Graves, *Circuit Judges*.

Patrick E. Higginbotham, *Circuit Judge*:

Glen Hardwick, a professional pilot, twice flew an airplane whose physical tail number did not match its registration paperwork and airworthiness certificate. The Federal Aviation Administration (FAA) suspended Hardwick's pilot's license for 150 days. Hardwick appealed to the

No. 25-60188

National Transportation Safety Board (NTSB),[1] which affirmed the sanction. Hardwick then petitioned for our review. We DENY his petition and uphold the suspension.

## I.

Like a car, a plane must be registered. It must physically display that registration as a "tail number," analogous to a car's license plate. And the plane also must carry a proper registration document and an "airworthiness certificate" bearing its registered tail number.

This controversy began when Michael King sought to change the tail number on his Cessna Citation 550 aircraft. The plane's original tail number was N550**ME**. But King wanted the tail number to match his initials, so he applied for a change from N550**ME** to N550**MK**. The FAA approved his request on May 8, 2019. It supplied a temporary "Assignment of Special Registration," then issued new permanent registration documents later.

King repainted the tail number on the outside of the airplane from N550ME to N550MK. As FAA regulations require, King also sought a new airworthiness certificate with the updated tail number. But the FAA denied the new airworthiness certificate because the plane needed additional inspections.

King apparently believed that when the FAA denied the new airworthiness certificate, that also nullified the new registration. So another pilot changed the physical tail number on the plane from MK back to ME

---

[1] The NTSB reviews FAA enforcement actions. *See Pham v. NTSB*, 33 F.4th 576, 582 (D.C. Cir. 2022) ("[T]he FAA has regulatory and enforcement authority, and the Board has adjudicatory authority." (citing *Garvey v. NTSB*, 190 F.3d 571, 573 (D.C. Cir. 1999)).

using strips of tape, covering up the arms of the "K" in white and adding back the bars of an "E" in black.

Soon after, King asked Hardwick to fly a round trip from Pearland, Texas, to Wichita, Kansas. At this point, the plane had its new registration documents for N550**MK** but bore the taped-on tail number N550**ME** and an airworthiness certificate for N550**ME**.

On October 14, 2019, Hardwick completed preflight checks with King. Hardwick noticed the taped-on tail number and asked King what had happened. King explained his belief that when the FAA denied a new airworthiness certificate, that had "reverted" the tail number from N550MK back to N550ME, necessitating the change on the outside of the airplane. Hardwick was apparently satisfied with that explanation and flew the plane from Pearland to Wichita the next day.

Two FAA safety inspectors intercepted Hardwick as he parked the plane in Wichita. The inspectors testified that Hardwick gave them several documents from the plane—including the new permanent registration for N550MK; the old permanent registration for N550ME; the Assignment of Special Registration documenting the change from ME to MK; and the old airworthiness certificate for N550ME.

The inspectors testified that, given current registration documents for N550MK and that their database said N550MK was the correct tail number, they gave Hardwick a "condition notice" for two infractions: displaying the wrong physical tail number on the outside of the plane (N550ME instead of N550MK) and flying without a valid airworthiness certificate for N550MK. The notice stated that "Operation of the aircraft prior to correction **will** be contrary to pertinent Federal Aviation Regulations" and that "A Special Flight Permit **will** be required to be issued prior to operation if corrective action has not been taken."

No. 25-60188

Despite receiving this write-up and a verbal warning from the inspectors, Hardwick flew back to Pearland the same day. The plane still displayed tail number N550ME on the second flight and did not have the required Special Flight Permit.

The FAA launched an investigation. On April 27, 2020, the FAA suspended Hardwick's pilot's license for 150 days, finding he violated 14 C.F.R. §§ 45.21(a) and 45.23(a) (requiring aircraft to display proper registered tail numbers), 91.7(a) (requiring civil aircraft to be in airworthy condition before operation), and 91.203(a)(1) (requiring civil aircraft to have a valid airworthiness certificate with the proper registered tail number).

On May 14, 2020, Hardwick appealed the suspension to the NTSB. After a hearing before an Administrative Law Judge (ALJ) from October 18 to October 20, 2022, the NTSB affirmed the order of suspension. Hardwick sought review by the full NTSB, which affirmed the ALJ's decision on February 19, 2025. Hardwick petitioned for review in this court on April 14, 2025. We have jurisdiction under 49 U.S.C. §§ 1153(b), 44709(f), and 46110(a).

## II.

"Appellate review of an agency's decision is circumscribed. We may consider only whether the agency's findings and conclusions were 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or 'unsupported by substantial evidence.'"[2]

Here, we consider whether the 150-day suspension was arbitrary or capricious as a matter of law. We hold that it was not. Hardwick affirmatively

---

[2] *Miranda v. NTSB*, 866 F.2d 805, 807 (5th Cir. 1989) (quoting 5 U.S.C. §§ 706(2)(A), (E)).

4

No. 25-60188

waived any "substantial evidence" argument; his counsel conceded at oral argument that substantial evidence supports the NTSB's decision. Even aside from this waiver, we hold Hardwick has forfeited any "substantial evidence" issues by failing to adequately brief them.[3]

## III.

On appeal, Hardwick contends the NTSB's decision was arbitrary and capricious for three reasons.[4] First, Hardwick claims he reasonably relied on representations from King and the FAA that the registered tail number had reverted from N550MK to N550ME, leading him to believe the plane was ready to fly because N550ME was taped onto the plane and displayed on the plane's old airworthiness certificate. Second, Hardwick argues his penalty was excessive because any violation was merely administrative and not a safety hazard. And third, he contends the NTSB arbitrarily treated him differently than pilot Scott Breeze. These arguments all fail.

---

[3] Hardwick cites some fact findings in his "statement of the issues," and he recites the substantial evidence standard, but he does not apply that standard, challenge the factfinding process, or attack the NTSB's credibility determinations. "It is not enough to merely mention or allude to a legal theory. We have often stated that a party must 'press' its claims." *Willis v. Cleco Corp.*, 749 F.3d 314, 319 (5th Cir. 2014) (quoting *United States v. Scroggins*, 599 F.3d 433, 446-47 (5th Cir. 2010)). Otherwise, the argument is forfeited. *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021).

[4] For the first time on appeal, Hardwick also argues "the Administrative Law Judge was prejudicial in his rulings." But as the NTSB points out, Hardwick offers no evidence of prejudice besides that the ALJ ruled against him. That is not enough. *See Dondero v. Jernigan*, No. 24-10287, 2025 WL 1122466, at *6 (5th Cir. Apr. 16, 2025) (unpublished), *cert. denied*, No. 25-355, 2026 WL 79972 (U.S. Jan. 12, 2026), *reh'g denied*, No. 25-355, 2026 WL 642816 (U.S. Mar. 9, 2026) ("Though the [] Parties may disagree with [a judge's] decisions, that is not evidence of bias, or even the appearance of bias."); *cf. Crummey v. Comm'r of Internal Revenue*, 684 F. App'x 416, 422-23 (5th Cir. 2017) (unpublished) ("A motion for disqualification ordinarily may not be predicated on the judge's rulings in the instant case." (cleaned up)).

No. 25-60188

## A.

On arbitrary-and-capricious review, we consider whether the NTSB's "decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."[5] "Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency."[6]

Our review of agency sanctions is especially deferential. "It is a fundamental principle . . . that where Congress has entrusted an administrative agency with the responsibility of selecting the means of achieving the statutory policy 'the relation of remedy to policy is peculiarly a matter for administrative competence.'"[7] "Only if the remedy chosen is unwarranted in law or is without justification in fact should a court attempt to intervene in the matter."[8]

As for affirmative defenses, "once the FAA has established a prima facie case[,] the burden shifts to the pilot to prove the validity of any affirmative defense he may have."[9]

## B.

---

[5] *Miranda*, 866 F.2d at 807 (quoting *Bowman Transp., Inc. v. Ark.–Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974)).

[6] *Id.* (quoting *Bowman Transp.*, 419 U.S. at 285).

[7] *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 112 (1946) (quoting *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 194 (1941)); *see also Pham*, 33 F.4th at 583 (applying this standard to review NTSB sanction decision).

[8] *Am. Power & Light*, 329 U.S. at 112-13.

[9] *Miranda*, 866 F.2d at 809 (cleaned up).

Hardwick first challenges the penalty with a reasonable-reliance argument. He contends he reasonably believed his flights were proper because the registration reverted back to tail number N550ME. In support, Hardwick testified that on the day he flew to Wichita, the FAA's online database reported the plane's tail number was N550ME. He also avers that King said "he was working with the Houston Flight Standards District Office to fix the paperwork issues" with the plane.

The NTSB's reasonable reliance doctrine is narrow. It is "applicable in cases involving specialized, technical expertise where a flight crew member could not be expected to have the necessary knowledge."[10] "If . . . a particular task is the responsibility of another, if the pilot-in-command has no independent obligation (e.g., based on the operating procedures or manuals) or ability to ascertain the information, and if the captain has no reason to question the other's performance, then and only then will no violation be found."[11] The NTSB considers "the facts of each case" and "the entire circumstances" of the violation.[12]

We find that Hardwick's reliance was not reasonable under this standard. So we uphold the NTSB's rejection of the defense because it was not "unwarranted in law or . . . without justification in fact[.]"[13]

**i.**

First, Hardwick was the pilot-in-command and the sole crew member on each flight. The pilot-in-command is "ultimately responsible for safe

---

[10] *Administrator v. Haddock*, No. EA-5596, 2011 WL 3958427, at *4 (N.T.S.B. Aug. 29, 2011) (cleaned up).

[11] *Id.* (cleaned up).

[12] *Id.*

[13] *Am. Power & Light*, 329 U.S. at 112-13.

operation of the flight, which involves ensuring the aircraft is in an airworthy condition prior to and during its operation." That means Hardwick was personally responsible for confirming the plane was registered and airworthy. Hardwick did not do so, and his reliance on King for this purpose was unreasonable.

Instead, Hardwick ignored numerous red flags. King warned Hardwick there were "paperwork issues" before the first flight. Hardwick admits that as he approached the plane, he saw the tail number had been modified using tape. He also admits that after he boarded and saw the registration and airworthiness documents for N550ME, he stopped reviewing the plane's paperwork—even though King had told him about active "paperwork issues" and Hardwick saw other documents on board but did not read them. (If Hardwick reviewed these additional documents before the first flight, as was his obligation, then he would have learned about the tail number change to N550MK.) Most significantly, Hardwick took off from Wichita after FAA inspectors wrote him up for deficient paperwork and handed him a Condition Notice that Hardwick admits he received but did not read.

Hardwick claims he reasonably relied on wrong information—yet he ignored or outright evaded numerous chances to learn the real facts, flouting his responsibility to be informed as the pilot-in-charge. This falls short of the NTSB's standard for reasonable reliance. Hardwick had the "independent obligation" and "ability to ascertain the information" about the plane's registration and airworthiness.[14] He had substantial "reason to question" whether everything was in order.[15] And verifying the paperwork was not "the

---

[14] *See Haddock*, 2011 WL 3958427, at *4.

[15] *Id.*

responsibility of another."[16] The NTSB's rejection of his reliance arguments was neither arbitrary nor capricious.

**ii.**

Second, Hardwick's tail number reversion theory is without support in fact or law and is inapplicable to the reasonable-reliance defense. Hardwick has offered no evidence that tail numbers typically revert when a new airworthiness certificate is denied, nor that the tail number reverted in this specific case. Unsurprisingly, the NTSB concluded the tail number did not revert back to N550ME, citing:

- The "Assignment of Special Registration" documenting the change from N550ME to N550MK;
- "Very credible" testimony from the FAA inspectors who intercepted Hardwick in Wichita, explaining that he supplied a current, valid permanent registration document for N550MK;
- One inspector's "detail[ed]" testimony that the FAA database showed tail number N550MK on the date Hardwick flew, plus two contemporaneous reports to that effect written within one day of Hardwick's flights; and
- The fact that shortly after Hardwick's flights, King requested to change the tail number back from N550MK to N550ME—which would have been unnecessary if the tail number already reverted to N550ME as Hardwick claims.

Given these facts, the NTSB discredited Hardwick's countervailing testimony about what he remembered seeing in the FAA database. The NTSB also discounted Hardwick's screenshot of the database from March

_____

[16] *Id.*

No. 25-60188

2020, finding it proved nothing because King had changed the tail number again before the screenshot was taken.

Hardwick's reversion argument also suffers from a deeper problem: whether the tail number reverted is not actually relevant to the reasonable-reliance standard. Whatever changes or reversions had occurred in the past, Hardwick was personally obligated to verify the registration status <u>when he flew</u>. He could not "reasonably rely" on other people for that information. And he unreasonably ignored onboard documents, information from FAA inspectors, and a written infraction, all of which would have informed him of the current tail number.

For these reasons, the NTSB did not err in rejecting Hardwick's reliance defense.

## C.

Hardwick also argues the sanction was excessive because his violations were only administrative, with no bearing on flight safety. As support, he states the aircraft had an airworthiness certificate for its old tail number; that he flew with a physical tail number matching this old airworthiness certificate; and that the plane became unairworthy only because of a paperwork change.

But the NTSB did not sanction Hardwick for flying an unsafe airplane. It sanctioned him for flying an unairworthy airplane. It is true that "there is a distinction between an ineffective airworthiness certificate and an aircraft that is unairworthy due to its physical condition." But an aircraft can lose airworthy status for safety reasons <u>or</u> administrative reasons.[17]

_____

[17] *See, e.g.*, *Legal Opinion on Whether Any Regulation Proscribes an Approval for Return to Service of a U.S.-Registered Aircraft Following an Inspection Required by 14 C.F.R.*

Here, Hardwick flew a plane that was unairworthy because its airworthiness certificate did not match its latest registration. "Administrative" or not, that was a sanctionable violation of FAA regulations. Declining to mitigate Hardwick's penalty for the administrative nature of the violation was not arbitrary or capricious.

## D.

Hardwick also references another pilot, Scott Breeze, to argue his own punishment was "disproportionate." Like Hardwick, Breeze flew this same airplane after the registration change from N550ME to N550MK. Unlike Hardwick's case, however, the plane still displayed tail number N550MK when Breeze flew it (before the K-to-E tape job). But the FAA informed both pilots they were displaying the incorrect tail number, even though both pilots flew with the same registration documents. Inspectors told Breeze he was wrong to display tail number N550MK, while inspectors told Hardwick he was wrong to display tail number N550ME. Only Hardwick got suspended, while Breeze apparently did not.[18]

This disparity does Hardwick no favors in the end. The FAA later admitted the Breeze incident was a mistake. After further investigating, FAA personnel concluded "the aircraft . . . ha[d] been registered by the owner properly" when Breeze flew it with tail number N550MK. It was not arbitrary or capricious to treat the two pilots differently under these circumstances. Hardwick flew displaying the wrong tail number (N550ME)

_____

*part 91, 125, or 135 if the Aircraft Registration Certificate is Not Current?*, 2012 WL 2368333, at *2 (D.O.T. June 18, 2012).

[18] Hardwick did not call Breeze as a witness or offer any other information about what happened to him. The best evidence is the event logs for the airplane in this case, which state that the FAA ultimately took "no further action" against Breeze.

No. 25-60188

and got sanctioned; Breeze flew displaying the correct tail number (N550MK) and did not get sanctioned.[19]

## IV.

We DENY Hardwick's petition for review.

_____

[19] It is uncontested that the plane never had an airworthiness certificate for its new tail number N550MK. That means Breeze, like Hardwick, also flew without a valid airworthiness certificate. The record does not reveal whether the FAA sanctioned Breeze for that violation, and Hardwick does not address this point.